IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **AEROTEK, INC.,**<br>7301 Parkway Drive South<br>Hanover, MD 21076<br><br>        Plaintiff,<br><br>    v.<br><br>**JOEL T. MURPHY**<br>4643 Tennessee<br>St. Louis, Missouri  63111<br><br>and<br><br>**BEACON HILL STAFFING GROUP, LLC**<br>**c/o CSC-Lawyers Incorporating Service**<br>**Company**<br>**Registered Agent**<br>**221 Bolivar Street**<br>**Jefferson City, MO 65101**<br><br>        Defendants. | No. 4:17-cv-2469 |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Aerotek, Inc. ("Aerotek"), by counsel, brings this Complaint against Defendants Joel T. Murphy ("Murphy") and Beacon Hill Staffing Group, LLC ("Beacon Hill") as follows:

**NATURE OF THE ACTION**

1. This is an action to redress unlawful conduct by Aerotek's former employee, Murphy, and his current employer, Beacon Hill. Aerotek seeks to enforce its rights arising out of Murphy's employment agreement and under Missouri law. Additionally, Beacon Hill has tortiously interfered and is continuing to tortiously interfere with Murphy's employment agreement through its continued employment of Murphy.

## PARTIES

2. Aerotek is a Maryland corporation with its principal place of business located in the State of Maryland. Aerotek is registered to do business in Missouri and maintains an office in St. Louis.

3. Murphy is a Missouri citizen, residing at 4643 Tennessee, St. Louis, Missouri 63111. Murphy was an Aerotek employee from on or around October 21, 2014 until his termination for cause on July 19, 2017.

4. Beacon Hill is a limited liability company organized under the laws of the State of Massachusetts. Its headquarters and principal place of business are located at 152 Bowdoin Street, Boston, Massachusetts 02108. Upon information and belief, none of Beacon Hill's members are citizens of Missouri.

## JURISDICTION AND VENUE

5. Aerotek and Defendants are citizens of different states. The amount in controversy is in excess of $75,000, exclusive of interest and costs, including, but not limited to, that the value to Aerotek of the injunctive relief sought exceeds $75,000, based on the amount of business at issue if Defendants are permitted to continue their current course of conduct. Subject matter jurisdiction is therefore proper under 28 U.S.C. § 1332(a).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred or are occurring in this district.

## GENERAL BACKGROUND

7. Aerotek is engaged in the business of recruiting, employing and providing the services of personnel on a temporary or permanent basis to companies throughout the United States, and in the St. Louis, Missouri area, in particular.

8. Aerotek invested and continues to invest considerable resources to develop information, methods, and techniques to: (a) identify entities that utilize professional placement services to fill staffing needs; (b) identify the key individuals responsible for recruitment of professional employees within those entities; (c) maintain, develop and nurture business relationships with those entities and individuals; (d) learn clients' business and staffing needs; (e) develop innovative solutions to meet clients' staffing needs; (f) develop, screen, and maintain highly-qualified candidates for placement with its clients; and (g) set appropriate pricing to attract and maintain clients.

9. The information described in Paragraph 8 is valuable, confidential, and proprietary to Aerotek, and is not generally known in the public domain.

10. Individuals employed by Aerotek who are involved in the recruitment of potential candidates and placement, *inter alia*, become inexorably and intimately knowledgeable regarding Aerotek's clients, financial information regarding its clients' rates, its contacts for those clients, its clients' needs, and the candidates Aerotek has or may have to fill those needs.

11. The aforementioned information has significant economic value to Aerotek and would be of significant economic value to competitors in the professional recruitment and placement industry.

12. To protect its legitimate business interests with respect to the aforementioned information, Aerotek requires that the individuals it employs to conduct professional recruitment and placement sign restrictive covenants and non-disclosure agreements as a condition of employment.  Aerotek also maintains its client and candidate information in secure, password-protected databases.

## MURPHY'S EMPLOYMENT WITH AEROTEK

13. On or about October 20, 2014, Aerotek hired Murphy for the position of Recruiter in its St. Louis, Missouri office. He was subsequently promoted to an Account Manager.

14. At all times relevant to this matter, Murphy worked in Aerotek's St. Louis, Missouri office.

15. Prior to his employment with Aerotek, Murphy had no knowledge of Aerotek's confidential information or trade secrets, *i.e.*, the identity of Aerotek's clients, its contacts for those clients, pricing for various clients, its clients' needs and the data bank of information regarding potential candidates to fill positions. At the outset of his employment, Murphy received training from Aerotek related to his position as a Recruiter to learn information regarding Aerotek's confidential information. Thereafter, Murphy continued to receive training and gain knowledge of Aerotek' confidential information during his tenure with the company.

16. In carrying out his duties for Aerotek, Murphy had access to proprietary and confidential information, including but not limited to: Client Lists, Internal Employee Contracts, Client Service Agreements, Consultant Agreements, Road Books (print-outs of all clients and contacts within territory), Siebel reports (sales and documentation information), Bill Rate information based on skills of consultants and clients, Burden Sheets, RWS Information (resume and information database for all candidates), Hot Books, Submittal Logs, and Phone Interview Sheets. Murphy also participated in meetings to discuss current and target accounts with other employees in the office where he worked, learning about opportunities with the accounts Aerotek was and is servicing.

17. During his employment with Aerotek, Murphy had a duty to, among other things, gain familiarity with candidates and clients; to evaluate them; maintain business relationships with

existing clients; develop and maintain lists of candidates, clients and contacts; and work diligently to develop the business of Aerotek.

18. As an employee of Aerotek and through the use of Aerotek's resources, Murphy developed and maintained relationships with clients and candidates in Aerotek's database.

19. Murphy's duties included creating goodwill for Aerotek through personal contacts and business relationships. In particular, Murphy developed and maintained strong business relationships with prospects and clients through cold-calling, directly meeting with them, and networking among industry associations. He also utilized a consultative approach to determine potential client needs and developed well-rounded business plans with optimal solutions, and managed a team of recruiters and ensured they had an effective recruiting strategy to deliver on clients' tight deadlines.

20. As an employee of Aerotek and through the use of its resources, Murphy had access to and was exposed to the following confidential information:

    a. the identity of Aerotek's clients;

    b. the identity of the contact persons at Aerotek's clients who decide or have significant influence regarding which recruiting/placement firm(s) they will use;

    c. the billing rates Aerotek charges each of its clients (which vary by client);

    d. the placement/recruitment history of Aerotek with clients and current/future staffing requirements;

    e. margin tolerances regarding prices including wage rates of contract employees;

    f. sales and marketing strategies, along with sales, recruiting, pricing and marketing techniques;

5

g.  the particular idiosyncrasies of each client/contact person including their preferences, likes, and dislikes regarding recruiting/placement; and

h.  the employment histories, qualifications, contact information, and preferences of candidates suitable to satisfy clients' requirements.

21.  The information referenced in paragraph 20 above is not otherwise obtainable from public sources and constitutes confidential information and trade secrets.

## MURPHY'S EMPLOYMENT CONTRACT

22.  On or around October 20, 2014, Murphy signed an Employment Agreement (the "Agreement") with Aerotek, which included non-compete, non-solicit and non-disclosure obligations.  A copy of the Agreement is attached as Exhibit A.

23.  The Agreement provides, in relevant part, as follows:

> **3.  NON-COMPETE COVENANT:** EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of AEROTEK's Business for which EMPLOYEE performed services or about which EMPLOYEE obtained Confidential Information during the two (2) year period preceding termination of EMPLOYEE's employment, within a radius of fifty (50) miles from the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) year period preceding termination of EMPLOYEE's employment. The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.
>
> **4.  NON-SOLICITATION COVENANT**: EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether

by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly:

(a) Communicate with any individual, corporation or other entity which is a customer of AEROTEK and about which EMPLOYEE obtained Confidential Information or with which EMPLOYEE did business on AEROTEK's behalf during the two (2) year period preceding termination of EMPLOYEE's employment for the purpose of:

(i) entering into any business relationship with such customer if the business relationship is competitive with any aspect of AEROTEK's Business for which EMPLOYEE performed services or about which EMPLOYEE obtained Confidential Information during the two (2) year period preceding termination of EMPLOYEE's employment, or

(ii) reducing or eliminating the business such customer conducts with AEROTEK; or

(b) Communicate with any person who has been a Regular Employee within the two (2) year period preceding termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge or had contact by reason of EMPLOYEE's employment with AEROTEK for the purpose of:

(i) providing services to any individual, corporation or entity whose business is competitive with AEROTEK, or

(ii) leaving the employ of AEROTEK; or

(c) Communicate with any person who has been a Contract Employee within the two (2) year period preceding termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge or had contact by reason of EMPLOYEE's employment with AEROTEK for the purpose of:

(i) ceasing work for AEROTEK at customers of AEROTEK, or

(ii) refraining from beginning work for AEROTEK at customers of AEROTEK, or

(iii) providing services to any individual, corporation or entity whose business is competitive with AEROTEK.

> As used in this Paragraph 4: "Regular Employee" means an employee of AEROTEK who is not a "Contract Employee"; and "Contract Employee" means an employee or candidate for employment of AEROTEK who is or was employed to perform services or solicited by EMPLOYEE to perform services at customers of AEROTEK.
>
> The prohibitions contained in (a), (b) and (c) above shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.
>
> \* \* \*
>
> **6.   COVENANT NOT TO DIVULGE CONFIDENTIAL INFORMATION**: EMPLOYEE covenants and agrees that, except as required by the proper performance of EMPLOYEE's duties for AEROTEK, EMPLOYEE shall not use, disclose or divulge any Confidential Information of AEROTEK to any other person, entity or company besides AEROTEK. For purposes of this Agreement, "<u>Confidential Information</u>" shall mean information not generally known by AEROTEK's competitors or the general public concerning AEROTEK and that AEROTEK take reasonable measures to keep secret, including but not limited to: their financial affairs, sales and marketing strategy, acquisition plans, pricing and costs; their customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephones numbers, skill sets, availability and wage rates of its temporary or contract personnel; sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms and processes for acquiring and recording information, financial controls, and management practices, procedures and processes.

24.   The Agreement also provides that "[t]he terms of Paragraphs 3 through 15 of this Agreement (including the State Specific Appendix) shall survive the termination of EMPLOYEE's employment with AEROTEK." (Ex. A, Agreement ¶ 2).

25. The Agreement further contains a notice requirement that Murphy provide Aerotek at least 14 days' notice of any violation of the non-disclosure, non-compete and non-solicitation obligations. (Ex. A, Agreement ¶ 13).

26. The Agreement contains a choice of law provision to apply Maryland law. (Ex. A, Agreement ¶ 10).

## MURPHY'S SEPARATION FROM AEROTEK

27. Murphy acknowledged misrepresenting information on an expense report, and, as a consequence, was terminated on July 19, 2017.

28. By the fact of his employment with Aerotek, and the knowledge he derived therefrom, Murphy took with him upon his resignation Aerotek's sensitive, confidential, proprietary and trade secret information.

29. In particular, Murphy took with him knowledge regarding candidates' preferences, work and salary histories, Aerotek's clients, the contact persons of those clients, the idiosyncrasies of the clients/contact persons, the clients' recruiting/placement needs, and the account managers' assessment of the clients' future needs and plans for meeting those needs.

## MURPHY'S POST-RESIGNATION CONDUCT

30. While the exact date of employment is as yet unknown, Murphy became employed by Beacon Hill in the position of Financial Account Executive in August 2017.

31. Beacon Hill is engaged in the business of recruitment and placement of employees to address clients' staffing needs. Beacon Hill competes in the same marketplace as Aerotek.

32. As a Financial Account Executive, Murphy is responsible for driving profitability, networking with customers and prospects, developing contacts and relationships with customers and prospects in a position to use Beacon Hill's services, and satisfying staffing requirements that customers and prospects request.

33. Murphy's employment with Beacon Hill violates or has violated Paragraph 3 of the Agreement in that he has been working or has worked within the 50-mile radius of Aerotek's St. Louis office and is engaged in an aspect of Aerotek's Business in which he performed work during the two years prior to his termination.

34. Upon information and belief, his position with Beacon Hill as a Financial Account Executive in which he is responsible for the same or similar duties as in the Account Manager position he held with Aerotek, has caused or will cause the inevitable disclosure of Aerotek confidential and trade secret information in violation of the Agreement.

35. Murphy also has violated his Agreement by communicating with at least six (6) Aerotek customers with whom he did business on Aerotek's behalf during the two years prior to his separation for the purpose of entering into a competitive business relationship for Beacon Hill's benefit or reducing the business such customers conduct with Aerotek.

36. In the course of these wrongful solicitations, Murphy, upon information and belief, has used and/or disclosed Aerotek's confidential and trade secret information, including, but not limited to, client contact information, for the purpose of furthering his interests at the expense of Aerotek.

37. Murphy failed to provide at least 14 days' notice to Aerotek, as required by the Agreement, of his violation of his restrictive covenant obligations.

38. Murphy's wrongdoing has caused and will continue to cause Aerotek irreparable damage in excess of $75,000, exclusive of interest and costs.

39. Upon information and belief, Beacon Hill has encouraged, approved and/or ratified Murphy's unlawful and improper actions and has done so without privilege to do so. A serial violator of other companies' restrictive covenant agreements, Beacon Hill has been the subject of prior litigation by Aerotek (or its affiliated companies), as well as a defendant in no less than 16

lawsuits alleging tortious interference with other parties' contractual rights. Upon information and belief, Beacon Hill's business model is to hire employees from competitors for the purpose of exploiting the contacts they developed at the competitor to get new clients, disregarding competitors' contractual rights in protecting legitimate business interests.

### COUNT I - BREACH OF CONTRACT
### (AGAINST MURPHY)

40. Aerotek incorporates and re-alleges paragraphs 1 through 39 of this Complaint as if those allegations are fully set forth in this paragraph.

41. Based on the Agreement's choice-of-law provision, this claim is governed by Maryland law.

42. All conditions precedent necessary for the enforcement of the Agreement have been satisfied.

43. Murphy's Agreement is reasonably necessary to protect Aerotek's legitimate business interests, including Aerotek's trade secrets and confidential information and its business relationships.

44. Murphy has breached his obligations under the Agreement by engaging in Aerotek's business in which he performed services during the last two years of his employment with Aerotek within a 50-mile radius of his last place of employment for Aerotek.

45. Murphy has breached his obligations under the Agreement by using and/or disclosing Aerotek's confidential information. Further, Murphy will inevitably use and/or Aerotek's confidential and trade secret information based on his identical or substantially similar job responsibilities with Beacon Hill.

46. Murphy has breached the Agreement by communicating with Aerotek customers contrary to his non-solicitation obligation.

47. Murphy has breached the Agreement by failing to provide the required notice of his violations of its obligations.

48. Murphy's wrongful actions have proximately damaged Aerotek's legitimate business interests, goodwill, and reputation, and have denied Aerotek the benefit of its bargain with respect to the Agreement.

49. Aerotek has been injured irreparably and otherwise, as a direct and proximate result of the breaches of contract by Murphy, and has suffered damages in an amount to be proven at trial.

### COUNT II - VIOLATION OF MISSOURI UNIFORM TRADE SECRETS ACT
### (AGAINST MURPHY)

50. Aerotek incorporates and re-alleges paragraphs 1 through 49 of this Complaint as if those allegations are fully set forth in this paragraph.

51. Murphy has knowledge of Aerotek's confidential information concerning its business plans and strategies, customer lists, Contract Employees, financial information concerning the company's products and other proprietary information relating to Aerotek's business, the disclosure and misappropriation of which poses a significant threat to Aerotek's ongoing business in Missouri.

52. Aerotek has made reasonable efforts to maintain the confidentiality of such information.

53. Aerotek's confidential information, including but not limited to customer lists, has actual and potential independent and economic value to Aerotek and is not generally known to or readily ascertainable by Aerotek's competitors.

54. Aerotek's confidential information, including but not limited to customer lists, were developed by Aerotek and constitute "trade secrets" within the meaning of the Missouri Uniform Trade Secret Act, §§ 417.450 through 417.467 R.S.Mo. (2011) ("Act").

55. Based on his job responsibilities with Beacon Hill, Murphy has inevitably disclosed or used, or will inevitably disclose or use Aerotek's confidential information. His actions are undertaken with reckless indifference to Aerotek's rights.

56. As a direct and proximate result of Murphy's violation of the Act, Aerotek has been and will continue to be severely and irreparably damaged.

57. This Court has jurisdiction to enjoin the actual or threatened misappropriation of Aerotek's trade secrets pursuant to the Act and is authorized to award both actual and punitive damages for such misappropriation pursuant to the Act.

### COUNT III - VIOLATION OF DEFEND TRADE SECRETS ACT
### (AGAINST MURPHY)

58. Aerotek incorporates and re-alleges paragraphs 1 through 57 of this Complaint as if those allegations are fully set forth herein.

59. Aerotek owns, possesses, and developed over the years certain nonpublic, confidential and proprietary information, including business contacts, customer lists, business plans and practices, marketing plans and practices, and other information related to its customers and candidates.

60. Aerotek has made a reasonable effort and took reasonable steps to keep the information secret, including by: maintaining the information in a secure server requiring a username and password, by having its employees sign agreements to agree to maintain the confidentiality of the information, by maintaining policies and procedures to maintain the confidentiality of the information, and by taking steps to determine whether breaches of the

information occurred and respond accordingly, and by taking legal action where necessary to protect the information.

61. This confidential and proprietary information involves and relates to customers and involves and relates to services intended to be used in interstate commerce. Aerotek's information constitutes trade secrets within the meaning of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1839.

62. This information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

63. In violation of Aerotek's rights, Murphy has misappropriated trade secret information in the improper and unlawful manner as alleged herein. Murphy's misappropriation of the trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

64. If Murphy's conduct is not remedied, and if he is not enjoined, Defendants will continue to use and/or disclose, for their own benefit and to Aerotek's detriment, Aerotek's trade secret information.

65. As the direct and proximate result of Murphy's conduct, Aerotek has suffered will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial, and is entitled to statutory exemplary damages and recovery of its attorneys' fees and costs.

66. Because Aerotek's remedy at law is inadequate, Aerotek seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its trade secret information and other legitimate business interests.

## COUNT IV - TORTIOUS INTERFERENCE WITH CONTRACT
### (AGAINST BEACON HILL)

67. Aerotek incorporates and re-alleges paragraphs 1 through 66 of this Complaint as if those allegations are fully set forth in this paragraph.

68. Aerotek has a valid and enforceable agreement with Murphy.

69. Beacon Hill has and has had knowledge of the Agreement.

70. Despite its knowledge of the terms of Murphy's post-employment restrictions under the Agreement, Beacon Hill has intentionally and improperly interfered with Murphy's performance of the Agreement by continuing to employ him and endorsing and/or ratifying his breach of the Agreement.  Beacon Hill's actions in causing Murphy not to perform the obligations under the Agreement were and are not justified or privileged.

71. As a direct and proximate result of Beacon Hill's improper interference, without justification or privilege, Aerotek has been severely and irreparably damaged.

72. Beacon Hill, acting willfully and with the intent to harm Aerotek in reckless indifference to its rights, has interfered with Aerotek's contractual rights, and, as such, Aerotek is entitled to punitive damages, especially given Beacon Hill's long-standing and inveterate pattern of engaging in unfair competition by interfering with parties' contractual rights.

73. Aerotek will not have an adequate remedy at law for the harm and damage that the acts of Beacon Hill and its tortious interference with Aerotek's contract will cause.

### PRAYER FOR INJUNCTIVE RELIEF AND DAMAGES

WHEREFORE, Aerotek demands the following:

    a.    For Count I, preliminary and permanent injunctions restraining and enjoining Murphy from continuing to breach the Agreement, specifically

       enforcing the Agreement, and for actual damages based on Count I to be proven at trial;

b.   For Counts II and III, preliminary and permanent injunctions restraining and enjoining Murphy from using and/or disclosing Aerotek's confidential information, and for actual and punitive damages to be proven at trial;

c.   For Count IV, preliminary and permanent injunctions restraining and enjoining Beacon Hill from continuing to interfere with the Agreement, and for actual and punitive damages to be proven at trial;

d.   reasonable attorneys' fees and costs against Murphy based on his violation of the Agreement and the Act; and

e.   such other and further relief as this Court may deem proper.

                                              Respectfully submitted,

/s/ Harry W. Wellford, Jr.
Harry W. Wellford, Jr. #32305
Jennifer Chierek Znosko #56842
LITTLER MENDELSON, P.C.
One Metropolitan Square
211 North Broadway, Suite 1500
St. Louis, Missouri  63102
Telephone:  (314) 659-2000
Facsimile:  (314) 659-2099
hwellford@littler.com
jznosko@littler.com

Firmwide:150175379.2 071691.1081